SPECTOR, Judge.
Appellant seeks reversal of a final summary judgment denying it recovery of the proceeds of a marine insurance policy that it had caused to be issued on a boat, the purchase of which it had financed.
The complaint was in two counts. The first count was for recovery of the appellant’s security interest in the boat which had been turned back into the dealer and thereafter was damaged and sunk during a hurricane. Count Two was for the unearned premium which remained due and owing after the policy was cancelled. The court below entered judgment for appellant for the unearned premium and attorney’s fee for recovery of the premium. The ap-pellee has cross assigned as error the lower court’s judgment on Count Two relating to the unearned premium, including award of attorney’s fee.
The lower court ruled against appellant on Count One on the basis of its finding that appellant had cancelled the policy on the one hand or, alternatively, that there was no coverage even in absence of cancellation because of a violation of the policy clause prohibiting a transfer of interest of the boat insured without a written consent of the insurance company.
The facts forming the background of this action were put into play on October 6, 1964, when Hudson Marina, Inc., a boat dealer in Fort Walton Beach, Florida, sold a 28-foot Chris Craft motorboat to one Harrison under a marine retail installment sales contract. On the same day, the sales contract was assigned to appellant who was and is in the business of financing installment sales. At the time of the sale, agents from both Hudson Marina and the appellant contacted one McNeir, who was a general insurance agent in a nearby town, and the latter was requested to and did arrange for the issuance of a marine insurance policy under which the instant action was brought. McNeir was acting as a broker apparently having no authority to bind the appellee insurance company. McNeir contacted Brundick Co., Inc. of Jacksonville, which was the appellee’s Florida agent. When McNeir first contacted Brundick about issuing this policy, he was advised that the premium was required in advance before the policy could issue. Appellant was notified of this cash requirement for the premium and remitted same to McNeir who in turn forwarded the required amount to Brundick in Jacksonville. The policy was thereupon issued to provide coverage from October 6, 1964, through October 6, 1967.
On May 12, 1965, the purchaser of the boat turned possession of it over to appellant because he could no longer make the payments on it. Under its retain title installment contract, appellant was empowered to repossess the boat upon breach of the contract for any of the causes set out therein, including failure to make payments as they matured. The relinquishment of possession by the purchaser to appellant was in the nature of a voluntary repossession whereby the purchaser, realizing his inability to keep up the payments and also recognizing that the appellant could gain possession of the boat because of the default in payments simply placed appellant in possession without necessity for the latter to take any legal action to enforce its possessory rights. Shortly after the boat was thus placed in appellant’s possession, it was transferred to Hudson’s Marina in Fort Walton Beach.
On July 8, 1965, two months after the buyer turned the boat back in, appellant instructed McNeir to have the insurance policy on the boat cancelled. McNeir requested that he be sent the policy so that he could turn it in and the appellant forwarded the policy to him. On July 12, McNeir *234 transmitted it to Brundick together with a memo stating:
“Please cancel the attached policy effective 5/12/65 if possible. That was the date the boat was repossessed. Return premium to Commercial Credit as they paid the premium.”
Because of internal personnel changes in Brundick’s office, the cancellation memo was not acted upon until August 11, 1965, at which time the policy was stamped showing cancellation as of May 12, 1965. The unearned premium calculated as of May 12 was mistakenly credited to Mc-Neir’s account with Brundick rather than refunded direct to Commercial Credit as per McNeir’s instructions.
On September 9, 1965, the boat was sunk in Choctawhatchee Bay near Hudson’s Marina as a result of hurricane Betsy. 'As of that date, no unearned premium had been returned to Commercial Credit as per McNeir’s memo of July 12, 1965, nor had either McNeir or Commercial Credit been expressly or affirmatively notified by Brundick or Standard Marine that the policy had been cancelled. Between July 12 and September 9, there were several attempts by appellant and McNeir to follow up the earlier cancellation order and ascertain the status of their instruction to the company with respect to the return of the unearned premium.
After the hurricane, appellant made a claim for the loss with the appellee and it was then that the appellee noted the earlier record of cancellation on its books and therefore denied coverage.
Appellant contends the trial court erred in holding that the policy was can-celled, but we find no merit in this position. The evidence is quite clear from appellant’s own agents that they requested that the policy be cancelled. The instructions for cancellation also sought to make the cancellation effective retroactively for the obvious purpose of increasing the amount of the premium refund. The company not only cancelled, but also agreed to the retroactive date of cancellation as of the date of the repossession. Appellant’s contention that their “if possible” clause goes to the act of cancellation is untenable. It obviously goes to whether the refund of the premium will be calculated retroactively or on the date of notice of cancellation. We think the trial court correctly held that the policy in question was cancelled prior to the loss at the behest of the appellant. The evidence shows that appellant surrendered the policy to McNeir for forwarding to Brundick to effect the cancellation. The regularly kept business records of Brundick show that the policy was can-celled and the unearned premium credited to McNeir. These facts are ample proof of effective cancellation. Allstate Insurance Company v. Doody, 193 So.2d 687 (Fla.App.1967). The crediting of the broker’s account with the unearned premium rather than returning it directly to appellant as directed by the broker did not have the effect of invalidating the cancellation nor did it give rise to any estoppel as argued by appellant. Aetna Casualty & Surety Co. v. Simpson, 128 So.2d 420 (Fla.App.1961).
Although we affirm the trial court’s ruling that the policy herein was cancelled and therefore appellee is not liable thereunder, we deem it necessary to observe that the alternative rationale upon which the lower court denied recovery on the policy relating to transfer of interest is not a valid defense. The policy premium herein was paid for by appellant. Appellant was designated as the loss payee together with the individual insured.' It only follows that a transfer from one designated loss payee to another is within the contemplation of the parties. National Ben Franklin Fire Ins. Co. v. Gasparilla Realty Corporation, 98 Fla. 362, 123 So. 736 (1929), cited and relied upon by appellee is not controlling in the case at hand bepause there the transferee of the property insured was a stranger to the insurance policy, whereas here the transferee was not a stranger.
*235 As to Count Two wherein appellant was awarded a judgment for the unearned premium which had been erroneously credited to the broker, appellee has failed to demonstrate error and we therefore affirm that portion of the trial court’s order also. As to the award foñ attorney’s fees to appellant under Count Two, we believe appellee’s cross appeal is well founded. The question of attorney’s fees in connection with a suit for recovery of unearned premiums was considered in Industrial Insurance Co. of New Jersey v. First National Bank of Miami et al., 57 So.2d 23 (Fla.1952), in which the court held that fees could not be awarded in connection with a recovery of unearned premiums because of policy cancellations.
Accordingly, we reverse only as to the award of attorney’s fees under Count Two and affirm the rest of the judgment.
WIGGINTON, C. J., and CARROLL, DONALD K., J., concur.